DAVID A. HUBBERT
Deputy Assistant Attorney General

LANDON M. YOST, CA Bar No. 267847
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044
202-307-2144 (v)
202-307-0054 (f)
Landon.M.Yost@usdoj.gov

Of Counsel:
JOSHUA D. HURWIT
United States Attorney
District of Idaho

*Counsel for the United States of America*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 22-cv-379 |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | |
| PATRICIA A. LEEDS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, the United States of America, with the authorization of the Secretary of the

Treasury and at the direction of the Attorney General of the United States, brings this timely

action to collect outstanding civil penalties (31 U.S.C. § 5321(a)(5), commonly known as

FBAR penalties), as well as all associated penalties and interest, having a total balance due to

the United States of America of $2,279,974.19, as of August 15, 2022. These FBAR penalties

were assessed against Richard K. Leeds for his willful failure to timely report his financial

interest in, and/or his signatory authority over, foreign bank accounts for the 2006-2012 years,

1

as required by 31 U.S.C. § 5314 and its implementing regulations. Additionally, the United States intends to use all appropriate pre-judgment remedies, post-judgment remedies, and additional surcharges as authorized by the Federal Debt Collection Practices Act (28 U.S.C. § 3001 et seq.) to collect any judgment it obtains in this case. In support of this action, the United States alleges as follows:

## JURISDICTION AND VENUE

1.      A delegate of the Secretary of the Treasury of the United States referred this case to the Department of Justice in accordance with 31 U.S.C. § 3711(g)(4)(C). This action is brought at the direction of the Attorney General of the United States.

2.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1345, and 1355.

3.      Venue is proper under 28 U.S.C. § 1391(b)(1) because Richard Leeds and Patricia Leeds resided in this district, and Patricia Leeds still resides in this district. Alternatively, venue is proper under 28 U.S. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## DEFENDANTS

4.      Richard Leeds died on November 8, 2021. Mr. Leeds was a resident of Pocatello, Idaho at the time the events that gave rise to the civil penalties at issue took place. He was a United States citizen. Patricia Leeds is named as a defendant because the claims at issue in this action survive Richard Leeds' death.

5.      Patricia Leeds ("Defendant") is the surviving spouse of Richard Leeds. She is named in her capacity as a potential successor-in-interest to the Estate of Richard Leeds "(Estate") and/or as a potential personal representative or administrator of the Estate and/or distributee of the Estate.

6.     It is currently unknown whether Mr. Leeds died testate, and unknown whether the Estate is in probate. No probate estate appears to have been opened in Idaho, Maryland, or Lake County, Florida, all places that Mr. Leeds is known to have resided.

## LEGAL BACKGROUND

7.     31 U.S.C. § 5314 authorizes the Secretary of the Treasury to require United States persons to report certain transactions with foreign financial agencies.

8.     Under the statute's implementing regulations, United States persons who have a financial interest in, or signature authority over, a bank, securities, or other financial account in a foreign country that exceeds $10,000 in aggregate value must report those relationships to the United States for each year in which such relationship exists. 31 C.F.R. § 1010.350(a); 31 C.F.R. § 1010.306.

9.     For the 2006-2012 years at issue, taxpayers were required to report the relationships on Form TD F 90-22.1, "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." For these years, the FBAR was due no later than June 30 of the following calendar year. 31 C.F.R. § 1010.306(c).

10.     31 U.S.C. § 5321(a)(5) authorizes the imposition of civil penalties for a willful failure to comply with the reporting requirements of 26 U.S.C. § 5314. Specifically, section 5321(a)(5)(C) provides for a penalty in the amount of the greater of $100,000 or 50% of the balance in the account at the time of the violation.

11.     The penalty set forth under 31 U.S.C. § 5321(a)(5)(C) is subject to interest and further penalties under 31 U.S.C. § 3717.

12.     Schedule B – Interest and Ordinary Dividends – is a form that some taxpayers must attach to their Form 1040 Individual Income Tax Return.

13.     Question 7a on Schedule B for the tax years 2006–2012 asked taxpayers if they had an interest in or signature or other authority over a financial account in a foreign country. The question was answered by checking boxes labeled yes or no. The question also referred taxpayers to Form TD F 90-22.1.

14.     Question 7b on Schedule B, for the tax years 2006–2012, directed taxpayers to list the name of the foreign country where their accounts were located.

## MR. LEEDS' FAILURE TO REPORT HIS INTEREST IN FOREIGN FINANCIAL ACCOUNTS

15.     Mr. Leeds was aware of bank reporting requirements and owned a safety deposit box with EFG Bank in Zurich Switzerland from which he made numerous cash withdrawals during 2006-2012.

16.     Mr. Leeds also had substantial gold holdings with EFG Bank.

17.      Mr. Leeds knowingly tried to evade his tax obligations by maintaining two foreign bank accounts at EFG Bank during 2006-2012.

18.     He opened the first account, an account ending in -3121 (Account One), on April 23, 1980. The name under which Account One was opened was WashingtonOne, a code name Mr. Leeds used to conceal his association with the account

19.     Account One was closed on April 20, 2009, and the proceeds of Account One were transferred to another account held with EFG Bank, an account ending in -106 (Account Two), an account which Mr. Leeds also tried to conceal his association with. At the time of transfer the assets of Account One totaled $2,092,634.

20.     The bank statements for Account One show cash withdrawals from the account totaling $157,040 between 2006-2009. Mr. Leeds initially denied to the IRS that he had made

such withdrawals, a clear admission of knowledge that Account One was subject to FBAR

reporting requirements

21.     Account Two was opened on January 16, 1997, and closed on June 12, 2012. Mr.

Leeds closed Account Two shortly after becoming aware of Foreign Account Tax Compliance

Act (FATCA) requirements requiring foreign financial institutions to report information to the

IRS about accounts held by U.S. taxpayers. The name on Account Two was Asian Group for

International Studies and Training (AGIST).

22.     Mr. Leeds, not AGIST, was the actual beneficial owner of Account Two.

23.     AGIST was a foreign corporation created in Turks and Caicos in 1997 by Mr.

Leeds. Mr. Leeds was the beneficial owner of this corporation, which was yet another attempt to

conceal his association with a foreign account and evade the FBAR requirements. Mr. Leeds

was identified as the "Director" of AGIST, and also as the President/Secretary.

24.     The code name on Account Two was "WashingtonTwo," and the business

activity was listed as consulting.

25.     Mr. Leeds had issued instructions to EFG Bank that it was to hold his mail and

other correspondence related to the accounts.

26.     The cash withdrawals from Account Two totaled $483,077 between 2006 and

2012. Mr. Leeds initially denied to the IRS that he had made such withdrawals.

27.     The funds from Account Two were purportedly transferred to a bank account of

Mr. Leeds in the United States in 2012, and the account was closed. At the time of closure the

value in Account Two was $2,456,961.

28.     The aggregate balance of Account One exceeded $10,000 for 2006-2009, and the aggregate balance of Account Two exceeded $10,000 for 2006-2012. Accordingly, Mr. Leeds was required to file FBARs for these accounts for these years.

29.     Mr. Leeds failed to file any FBARs for the 2006-2012 years.

30.     Accounts One and Two also generated interest, qualified dividends, and capital gains and other income during the 2006-2012 years, but Mr. Leeds also failed to report all of this income on his federal income tax returns for these years.

31.     Mr. Leeds' 2006-2012 federal income tax returns were prepared by CPA Joan Leanos.

32.     Ms. Leanos provided her clients, including Mr. Leeds, with tax organizers, which contained questions about foreign accounts.

33.     Mr. Leeds answered "No" to the questions in these organizers about whether he had any foreign accounts.

34.     Mr. Leeds admitted to Ms. Leanos that he had a foreign source of income, and asked Ms. Leanos whether money in a foreign account was taxable. Ms. Leanos specifically advised him to see a tax attorney, but he did not follow her advice.

35.     Mr. Leeds' federal income tax returns for 2006-2012 reported on Schedule B that Mr. Leeds did not have any interest in any foreign bank accounts.

**THE ASSESSMENT AND COLLECTION OF THE FBAR PENALTIES**

36.     In December of 2014 Mr. Leeds applied to participate in the IRS's Offshore Voluntary Disclosure Program and was initially accepted.

37.     In March of 2015 Mr. Leeds filed delinquent FBARs for 2006-2012 as part of the OVDP requirements. These FBARs used account values determined at year's end.

38.     In October of 2016 Mr. Leeds filed a second set of FBARs for 2006-2012, to correct the account values. The account values used for this set of FBARs reported maximum account values.

39.     In April 2018 Mr. Leeds opted out of the OVDP and an IRS examination commenced.

40.     In October 2019 the IRS issued Letter 3709 to Mr. Leeds informing him of proposed willful FBAR penalty assessments. Mr. Leeds protested the proposed assessments and requested consideration by the IRS Independent Office of Appeals, which upheld the assessments.

41.     On September 4, 2020 the willful FBAR penalties were assessed in the total amount of $1,518,883 for years 2006-2012.

42.     The total willful FBAR penalties were calculated to be 50% of the highest aggregate balance of Accounts One and Two, which was $3,037,768 in 2011.

43.     These total penalties were allocated among years 2006-2012 as detailed below, with no yearly penalty amount exceeding 50% of Mr. Leeds' aggregate foreign account balance in Accounts One and Two, or $100,000:

| Year | Penalty Amount | Aggregate Balance on Due Date of FBAR |
|---|---|---|
| 2006 | $271,645 | $2,184,926 |
| 2007 | $242,796 | $2,228,313 |
| 2008 | $244,236 | $2,189,129 |
| 2009 | $265,411 | $2,358,024 |

| | | |
|---|---|---|
| 2010 | $294,805 | $2,727,620 |
| 2011 | $100,000 | N/A (penalty does not exceed $100,000) |
| 2012 | $100,000 | N/A (penalty does not exceed $100,000) |
| **Total** | **$1,518,883.00** | |

44.     Also on September 4, 2020 the IRS issued Form 3708 to Mr. Leeds informing

him of the assessments and demanding payment. To date no payments have been made.

### TIMELINESS OF ASSESSMENTS AND THIS ACTION

45.     The statute of limitations for the assessment of an FBAR penalty is six years

from the date of the violation. 31 U.S.C. §5321(b)(1). The violation dates relevant to this action

are June 30 of the year following the calendar year for which a report needed to be made. 31

C.F.R. §1010.306(c).

46.     Mr. Leeds, however, consented to extend the statute of limitations for assessing

the FBAR penalties at issue multiple times. The latest consent was on October 18, 2019, and it

extended the time to assess the FBAR penalties to June 30, 2021. The assessment of the

penalties on September 4, 2020 was therefore timely.

47.     A suit to reduce to judgment FBAR penalties must be brought within two years

from the date of assessment (in this case, September 4, 2020) to be timely. 31 U.S.C. §

5321(b)(2). This suit is therefore timely.

### COUNT ONE: REDUCTION OF FBAR PENALTIES TO JUDGMENT

48.     During the 2006-2012 calendar years Mr. Leeds was a United States citizen who

had a financial interest in, and/or signatory authority over, foreign bank accounts with balances

exceeding $10,000 in each year (Accounts One and Two).

49.     Mr. Leeds failed to file an FBAR with respect to Accounts One and Two before June 30 of the following year for each calendar year 2006-2012, as required by 31 U.S.C. § 5314 and 31 C.F.R. § 103.27(c).

50.     Mr. Leeds' failures to timely file these FBARs were willful within the meaning of 31 U.S.C. § 5321(a)(5).

51.     Defendant is liable for the FBAR penalties described above in the amount of $2,279,974.19, as of August 15, 2022.

52.     Defendant is also liable for interest and penalties pursuant to 31 U.S.C. § 3717, which will accrue until the liability is paid.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States requests that the Court:

A.     Enter judgment against Defendant and in favor of the United States in the amount of $2,279,974.19, as of August 15, 2022, for the FBAR penalties assessed against Richard Leeds for the 2006-2012 years under 31 U.S.C. § 5321(a)(5) and the related late-payment penalties and interest that have accrued on those FBAR penalties, plus further interest and statutory additions that have and will continue to accrue after August 15, 2022; and

B.     Grant the United States its costs and fees herein, and such other relief as justice requires.


//


//

Respectfully submitted this 30th day of August, 2022.

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Landon M. Yost*
LANDON M. YOST
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044
202-307-2144 (v)
202-307-0054 (f)
Landon.M.Yost@usdoj.gov

Of Counsel:
JOSHUA D. HURWIT
United States Attorney
District of Idaho