UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PATRICIA A. LEEDS,<br><br>　　　　Defendant. | Case No. 1:22-cv-00379-AKB<br><br>**MEMORANDUM DECISION AND ORDER RE MOTION FOR RECONSIDERATION** |

## INTRODUCTION

Pending before the Court is Defendant Patricia Leeds's Motion for Reconsideration of the Court's Memorandum Decision and Order granting in part and denying in part the Government's summary judgment motion (Dkt. 45). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal arguments are adequately presented and that oral argument would not significantly aid its decision-making process. The Court therefore decides the motion on the record. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court denies the motion.

## BACKGROUND

The Court incorporates by reference the factual and procedural background in its Memorandum Decision and Order (Dkt. 36). In that order, the Court granted summary judgment in favor of the Government against the Estate of Richard Leeds, concluding that Richard's failure to file Reports of Foreign Bank and Financial Accounts (FBARs) for the tax years 2006 through 2012 was willful; the FBAR penalties survived Richard's death; and the Excessive Fines Clause applies to willful FBAR penalties (Dkt. 36 at 12–26).

**MEMORANDUM DECISION AND ORDER RE MOTION FOR RECONSIDERATION - 1**

Leeds seeks reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure, asserting that the Court clearly erred and that reconsideration is necessary to prevent manifest injustice (Dkt. 45-1 at 7, 9-15). Leeds argues that the Court overlooked evidence, failed to conduct a year-by-year willfulness analysis, improperly resolved intent issues, and adopted inconsistent positions regarding the punitive or remedial nature of FBAR penalties (*id*.; Dkt. 47).

## LEGAL STANDARD

A party may move for reconsideration of summary judgment order under either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *Clifford v. Rice*, 1999 WL 542867 at *1 (9th Cir. 1999) (unpublished) (citing *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991)). Leeds cites both rules. Rule 59(e) is used to request a court's substantive change of mind; meanwhile, Rule 60(a) is used to correct a judgment to implement its intended purpose. *Tattersalls, Ltd. v. DeHaven*, 745 F.3d 1294, 1299 (9th Cir. 2014); *see also Garamendi v. Henin*, 683 F.3d 1069, 1079 (9th Cir. 2012) ("Rule 60(a) allows for clarification and explanation, consistent with the intent of the original judgment, even in the absence of ambiguity if necessary for enforcement.").

Here, Leeds seeks substantively different rulings which are contrary to the Court's summary judgment rulings; her request is not merely for clarification or explanation. Accordingly, Rule 59(e) is the applicable rule. Under Rule 59(e), a district court may grant relief to, among other reasons: (1) "correct manifest errors of law or fact upon which the judgment rests"; (2) "present newly discovered or previously unavailable evidence"; (3) "prevent manifest injustice"; or (4) "if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011); *see also Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

Relief under Rule 59(e) is an extraordinary remedy. *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Absent highly unusual circumstances, a court should not grant a motion for reconsideration. *Id.*; *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Notably, a party may not use a motion for reconsideration to "raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters.*, 229 F.3d at 890.

## DISCUSSION

Leeds does not identify any newly discovered evidence or an intervening change in controlling law.[1] Instead, she reasserts arguments previously raised and rejected at summary judgment and reframes them as: (1) not addressed, (2) clear error, or (3) causing manifest injustice. Leeds also repeatedly argues (again) that the Government's evidence is not "conclusive." This assertion, however, ignores the summary judgment standard which requires viewing the record as a whole and assessing whether a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986). Rule 59(e) does not permit reconsideration based on mere repeated arguments or require a higher evidentiary showing than the law requires. *Kona Enters*, 229 F.3d at 890. Accordingly, the Court does not endeavor to address every passing comment in Leeds's motion.

---

[1] Leeds has filed a second, separate motion for reconsideration arguing new law provides the Government's assessment of FBAR penalties violates the right to a jury trial under the Seventh Amendment (Dkt. 48) Leeds's summary-judgment briefing, however, defeats this argument. In that briefing, Leeds acknowledges that "*we do **not** claim that this summary judgment proceeding per se violates Defendant's constitutional right to a jury trial under the Seventh Amendment*. U.S. Const. amend. VII. Rather, if the Court denies the government's motion for summary judgment, Defendant will have a right to have a jury evaluate the government's evidence." (Dkt. 29 at 11 n.3) (emphasis added). This position is contrary to her position in her second motion for reconsideration. Leeds had the opportunity to raise her Seventh Amendment challenge but chose not to do so. She cannot take the opposite position now to seek a different ruling.

**MEMORANDUM DECISION AND ORDER RE MOTION FOR RECONSIDERATION - 3**

A.     **Willfulness (Objective Recklessness)**

Leeds contends that the Court overlooked important evidence and clearly erred by concluding there is no genuine dispute of material fact as to whether Richard willfully failed to file FBARs for tax years 2006 through 2012. Leeds specifically argues the Court failed to conduct a year-by-year analysis and improperly resolved issues of intent on summary judgment. The Court disagrees.

First, Leeds does not identify a disconnect between the Court's summary judgment analysis and the evidentiary record; rather, she repackages the same factual contentions previously raised and addressed on summary judgment (*compare* Dkt. 45-1 at 10–13 *with e.g.*, Dkt. 36 at 2-10; *id.* at 5 n.4; *id.* at 6 n.5). Each asserted "competing inference" that could be drawn from the use of account pseudonyms, hold-mail instructions, the role of AGIST, the timing of withdrawals, and Richard's repeated "no" responses on Schedule B was considered in the Court's prior Order, not in isolation, but as part of a cumulative pattern of conduct (Dkt. 36 at 12–18). The Court evaluated the undisputed record holistically and concluded that, taken together, the evidence established that Richard "clearly ought" to have known about the FBAR reporting requirement and consciously disregarded a grave risk of noncompliance in each relevant year (*id*. at 16–18). Leeds's efforts to re-label individual facts susceptible to benign subjective explanation does not create a genuine dispute where the standard applied was objective recklessness (*id*. at 17).

Second, the Court's task in resolving a Rule 59(e) motion is not to re-decide summary judgment or to reassess the evidence anew but to determine whether its prior ruling was clear error. The Court therefore only briefly explains why its earlier conclusion was not clearly erroneous. The record reflects a sustained pattern of conduct that establishes at least objective recklessness for each year from 2006 through 2012 (Dkt. 24-2 at 1–6).

**MEMORANDUM DECISION AND ORDER RE MOTION FOR RECONSIDERATION - 4**

To suggest otherwise, Leeds merely repeats the argument advanced in opposition to summary judgment—that the Court's analysis must be written out year by year. She relies primarily on *United States v. Burga*, 703 F. Supp. 3d 1078 (N.D. Cal. 2023), and *United States v. Hughes*, No. 18-cv-05931-JCS, 2021 WL 4768683, at *10 (N.D. Cal. 2021), *aff'd* 2024 WL 3887388 (9th Cir. Aug. 21, 2024) (Dkt. 29 at 15–18; Dkt. 32 at 6–8). Neither case, however, supports Leeds's position. To the contrary, both reinforce that the Court's approach here—finding willfulness in years where the evidence established it and declining to do so where the evidence did not—is appropriate and unremarkable.

*Hughes* is distinguishable. In that case, the district court expressly emphasized that the taxpayer prepared her own returns and did not use professional assistance and that the record was devoid of evidence suggesting she should have known of her FBAR obligations in certain years. *Hughes*, 2021 WL 4768683, at *10. In contrast, Richard repeatedly used the services of tax professionals and affirmatively provided false responses on Schedule B.

Likewise, *Burga* applied a particularized analysis based on evidentiary variation, denying summary judgment where the record lacked sufficient proof while granting it where concrete evidence of reckless disregard existed. *Burga*, 703 F. Supp. 3d at 1093–95. In doing so, one defendant was found reckless for a period of years while the other was found to be reckless only for certain of those years. Far from undermining the Court's analysis, these cases confirm that assessing willfulness based on the strength of the evidence in each relevant period is both doctrinally sound and consistent with prevailing authority.

For every year in question, and in addition to an undisclosed personal account, Richard Leeds used a foreign corporate entity, AGIST. He acknowledged that AGIST existed "for the purpose of holding foreign accounts and/or assets without disclosing [his] beneficial ownership";

AGIST "purported to be separate and apart from [him] but, in actuality acted as [his] nominee or alter ego in holding the financial accounts and/or assets"; and "the financial accounts and/or assets held in [AGIST's name] were [his] assets" (Dkt 24-43 at 3). Richard's shared control of AGIST in certain years does not negate the substance of these admissions—Richard used a sham corporation to hold his assets or financial accounts abroad to avoid disclosing his beneficial ownership. Leeds's hypotheticals do not change this fact. In 2006 alone, Richard's foreign income was over $113,000.00 and comprised more than half of his total income.

Further, for every tax year at issue, Richard signed a federal income tax return under penalty of perjury falsely answering "No" to the Schedule B question inquiring whether he had a financial interest in or signature authority over a foreign account. He likewise answered "No" on annual tax organizers provided by his accountant for some of those years and consistently misled her regarding the existence of foreign accounts, which is strong corroborating evidence of objectively reckless behavior. (Dkt. 24-11 at 1; Dkt. 24-39 at 1).

Viewed collectively and year by year, this conduct reflects circumstances under which a reasonable person in Richard's position should have recognized the need to confirm and satisfy his reporting obligations but did not despite being able to do so easily. Accordingly, the Court's prior conclusion that the undisputed record satisfied the objective recklessness standard articulated in *Hughes* does not constitute clear error warranting reconsideration under Rule 59(e).

**B.     Excessive Fines Clause**

Leeds contends that the Court committed clear error in its Excessive Fines Clause analysis by failing to give adequate weight to proportionality. Leeds makes three arguments. First, she argues that the Court did not sufficiently account for the magnitude of the assessed FBAR penalties relative to Richard's objectively reckless conduct, his level of culpability, and the asserted absence

**MEMORANDUM DECISION AND ORDER RE MOTION FOR RECONSIDERATION - 6**

of concrete financial harm to the Government (Dkt. 45 at 18–21). Second, Leeds emphasizes that the penalties approach the statutory maximum and asserts that, when measured against the gravity of the offense, they are constitutionally excessive (*id*. at 19–20). And third, she argues that the Court improperly discounted mitigating considerations raised at summary judgment, including age, the nature of the foreign accounts, and the lack of evidence that the funds were derived from criminal activity or used to facilitate unlawful conduct (*id*. at 20–21). According to Leeds, these factors demonstrate that the penalties are grossly disproportionate and that the Court's contrary conclusion misapplies the Eighth Amendment framework (*id*.).

The Government responds that, at summary judgment, Leeds expressly argued that willful FBAR penalties constitute "fines" subject to the Excessive Fines Clause and urged the Court to find the penalties unconstitutional as applied based on the same alleged mitigating factors on which she now relies (*compare* Dkt. 29 at 37, 41-45 *with* Dkt. 45-1 at 15-19). The Government further argues that the Court accepted Leeds's premise that the Excessive Fines Clause applies and then conducted a proportionality-analysis addressing the seriousness of the offense, the statutory penalty scheme, and the relationship between the penalties imposed and Richard's conduct (Dkt. 46 at 12–14). In the Government's view, Leeds's disagreement with the Court's weighing of those considerations does not amount to clear error and is not a proper basis for reconsideration under Rule 59(e) (Dkt. 46 at 15–16).

The Court agrees with the Government. In its summary judgment decision, the Court expressly assumed—without deciding—that the Excessive Fines Clause applies to willful FBAR penalties (Dkt. 36 at 21). It then analyzed proportionality based on the "specific actions of the violator rather than by taking an abstract view of the violation." *Thomas v. Cnty. of Humboldt*, 124 F.4th 1179, 1193 (9th Cir. 2024) (citations omitted); (Dkt. 36 at 21-25). The Court evaluated the

**MEMORANDUM DECISION AND ORDER RE MOTION FOR RECONSIDERATION - 7**

nature and extent of the reporting violations, including the multi-year duration of the failures to file, the substantial balances involved in the foreign accounts, the substantial foreign income, deceptive conduct, and Congress's determination that willful FBAR violations warrant severe civil penalties (*id*. at 24–25). The Court also considered the mitigating factors advanced by Leeds, including Richard's personal circumstances and the absence of evidence that the accounts were tied to other criminal conduct (*id*. at 25). Based on that analysis, the Court concluded that the penalties were not grossly disproportionate as applied to Richard Leeds (*id*. at 25–26).

More fundamentally, Leeds's criticisms misapprehend the operative legal questions. The threshold inquiry was whether the conduct satisfied statutory willfulness under 31 U.S.C. § 5321(a)(5) for purposes of summary judgment. The Court found that it did. Once willfulness—whether established through knowing conduct or objective recklessness—is shown, the statute authorizes the imposition of willful FBAR penalties. Whether those penalties are excessive under the Eighth Amendment presents a distinct inquiry, and the Court addressed that question separately. That analysis did not turn on parsing degrees of moral blame between subjective knowledge and recklessness but on whether the penalties, as applied, were grossly disproportionate to the gravity of Richard's offense. The Court concluded they were not.

Defendant's assertion that the Court failed to evaluate the offense as a "mere reporting violation" is likewise inaccurate. Nor did the Court uphold the penalties by deferring to the statutory maximum. The Court did not assess the FBAR violations in the abstract or treat them as technical paperwork lapses. Instead, it evaluated the nature and gravity of the offense in light of the conduct that rendered the violations willful. That conduct was integral both to the willfulness determination and to the assessment of the seriousness of the offense.

**MEMORANDUM DECISION AND ORDER RE MOTION FOR RECONSIDERATION - 8**

Finally, Leeds's motion identifies no intervening change in controlling law, newly discovered evidence, or authority the Court overlooked. Nor does it show that the Court failed to consider the proportionality arguments raised at summary judgment. Instead, the motion reiterates the same contentions regarding culpability, harm, and penalty magnitude and asks the Court to reweigh those considerations and reach a different result (Dkt. 45 at 18–21). That does not constitute clear error warranting reconsideration under Rule 59(e).

C.  **Survivability of FBAR Penalties**

Leeds argues the Court's conclusion that the FBAR penalties survive Richard's death is internally inconsistent with its Excessive Fines Clause analysis (Dkt. 45-1 at 19-20). According to Leeds, the Court cannot simultaneously characterize the penalties as punitive for Eighth Amendment purposes and remedial for survivability purposes without engaging in impermissible doctrinal double counting (*id.*). Leeds contends that once the Court determined the penalties are punitive enough to trigger Excessive Fines Clause scrutiny, it necessarily follows that the penalties are penal in nature and therefore abate upon the taxpayer's death (*id.*). Leeds thus maintains that the Court's survivability ruling rests on clear legal error warranting reconsideration under Rule 59(e) (Dkt. 45-1 at 19-20).

The Government responds that Leeds conflates two distinct legal inquiries governed by different standards and precedent (Dkt. 46 at 14-15). The Government explains that the Excessive Fines Clause inquiry asks whether a penalty is "solely remedial" or instead serves, at least in part, punitive or deterrent purposes, whereas survivability turns on whether Congress enacted the statutory scheme as civil and primarily remedial, even if it carries incidental punitive effects (*id.*). The Government further notes that courts—including those addressing FBAR penalties—have repeatedly held that civil penalties may survive a death even when they are punitive enough to

implicate the Eighth Amendment (*id*.). In the Government's view, the Court correctly recognized and applied this doctrinal distinction in its summary judgment order, and Leeds's disagreement does not establish clear error (*id*.).

The Court agrees with the Government. In its summary judgment decision, the Court expressly addressed the relationship between the Excessive Fines Clause analysis and the survivability of the FBAR penalties (Dkt. 36 at 25–26; 26 n.9). With respect to the Eighth Amendment, the Court explained that a penalty is subject to Excessive Fines Clause scrutiny if it serves, "at least in part," a punitive or deterrent purpose and is not "solely compensatory" (Dkt 36 at 25-26). Applying that standard, the Court assumed the Excessive Fines Clause applied and proceeded to analyze proportionality (*id*. at 24–26).

The Court separately analyzed survivability under the distinct federal common-law framework governing whether statutory causes of action abate upon death (*id*. at 26). As the Court explained, survivability turns on whether Congress intended the statutory scheme to be civil and primarily remedial, not on whether the statute is entirely free of punitive or deterrent effects (*id*. at 26 n.9). The Court noted that civil penalties may retain a remedial character—such as compensating the Government for investigative costs, lost revenue, and enforcement burdens— even if they also carry deterrent or punitive aspects sufficient to trigger Eighth Amendment scrutiny (*id*.).

Leeds's motion does not identify any authority holding that the conclusion that a penalty is subject to the Excessive Fines Clause compels a conclusion that the penalty is penal for survivability purposes. Nor does Leeds show that the Court misapplied the governing survivability standard. Instead, Leeds's argument rests on the premise that "doctrinal consistency" requires the same characterization of a penalty across different constitutional and statutory frameworks. That

premise is unpersuasive. One legal test governs the Excessive Fines Clause inquiry and the other governs the survivability of federal statutory claims. Each serves a distinct purpose, and a civil penalty may fail the "solely compensatory" test applicable under the Eighth Amendment while remaining primarily remedial for purposes of survivability.

Because the Court expressly recognized and applied this distinction in its prior Order and because Leeds identifies no clear error, intervening change in law, or overlooked authority, reconsideration of the Court's survivability analysis is not warranted.

## ORDER

IT IS ORDERED that Leeds's Motion for Reconsideration (Dkt. 45) is **DENIED**.

DATED: February 13, 2026

Amanda K. Brailsford
U.S. District Court Judge